```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

MELODY COOPER, Individually and   :
as Personal Representative of
The Estate of Kwamena Ocran       :

     v.                           :    Civil Action No. DKC 22-0052

                                  :
OFFICER JAMES DOYLE, et al.
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights action brought by Melody Cooper ("Plaintiff"), the mother and personal representative of the Estate of Kwamena Ocran ("Mr. Ocran"), is the motion for reconsideration filed by James Doyle ("Officer Doyle"), Willie Delgado ("Sgt. Delgado"), Kyle Khuen ("Officer Khuen"), and Larbi Dakkouni ("Cpl. Dakkouni") (collectively, "Defendant Officers") and City of Gaithersburg ("the City") (collectively with Defendant Officers, "Defendants"), (ECF No. 56).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion will be denied.

Defendants seek reconsideration of the court's July 29, 2024 memorandum opinion and order denying in part Defendants' motion for summary judgment.  (ECF No. 54).  Federal Rule of Civil Procedure 54(b) governs motions for reconsideration of orders "that adjudicate[] fewer than all the claims" and "do[] not end

the action." *See Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).  Courts in this circuit generally only reconsider interlocutory orders under the following narrow circumstances: "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Akeva, LLC v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565-66 (M.D.N.C. 2005); *see also Carlson*, 856 F.3d at 325.  A motion for reconsideration "may not be used merely to reiterate arguments previously rejected by the court."  *Innes v. Bd. of Regents of the Univ. Sys. of Md.*, 121 F.Supp.3d 504, 507 (D.Md. 2015).

In a strongly worded motion, Defendants argue that reconsideration is necessary because the court's prior ruling was "grounded on significant error."  (ECF No. 56, at 1). Specifically, Defendants argue that summary judgment should be granted in their favor on all the claims because there is no genuine dispute of material fact regarding the "objectively reasonable nature of the [Defendant] Officers' conduct."  (*Id.* at 13).

As set out in the memorandum opinion:

> Excessive force claims are evaluated under "a standard of 'objective reasonableness.'" *Betton v. Belue*, 942 F.3d 184, 191 (4th Cir. 2019) (quoting *Graham* [*v. Conner*], 490 U.S. [386,] [] 399 [(1989)]).  "When *deadly* force

2

>     is used, . . . [the court must] consider whether the hypothetical reasonable officer in that situation would have had 'probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others.'" *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (quoting *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005)). Factors to be considered when applying the objective reasonableness standard are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). The "reasonableness 'determination must focus on the moment that deadly force was used, not the whole episode,' and [the court] must be mindful that 'the justification for deadly force can fall away in seconds.'" *Aleman v. City of Charlotte*, 80 F.4th 264, 285 (4th Cir. 2023), *cert. denied*, 144 S.Ct. 1032, 218 L.Ed.2d 187 (2024)) (quoting *Stanton*, 25 F.4th at 233).

(ECF No. 54, at 20-21).[1] Defendants argue that there is no genuine dispute of material fact that their behavior met the "objective reasonableness standard." (ECF No. 56, at 12). Defendants contend that the two genuine disputes of material fact that this court

---

[1] The Supreme Court of the United States recently granted *certiorari* in *Barnes v. Felix*, 91 F.4th 393 (5th Cir. 2024), *cert. granted*, 2024 WL 4394125 (U.S. Oct. 4, 2024)(No. 23-1239), presenting the issue whether courts should apply the "moment of the threat" doctrine when evaluating an excessive force claim under the Fourth Amendment, as opposed to evaluating "the totality of the circumstances when analyzing the reasonableness of an officer's actions, including the events leading up to the use of force." Petition for Writ of Certiorari at *2, *Barnes*, 91 F.4th 393 (No. 23-1239).

identified in its memorandum opinion, (1) whether Mr. Ocran pointed a firearm at Defendant Officers, and (2) whether Mr. Ocran fired a firearm at Defendant Officers, are based on "speculation." (ECF No. 56, at 12). Respectfully, the court disagrees. After a thorough re-review of the record and case law, the court finds that there is a genuine dispute of material fact, so Defendants are not entitled to summary judgment.

Focusing primarily on the second *Graham* factor, Defendants argue that there is no genuine dispute of material fact that Mr. Ocran posed a threat to Defendant Officers' safety. (ECF No. 56, at 2-7). First, Defendants argue that Plaintiff has not put forth any evidence to dispute the Officers' testimony of the account. (*Id.* at 4). Defendants appear to take offense that this court considered the possibility that Defendants' testimony may be self-serving. (*Id.* at 4-5). However, as discussed in the memorandum opinion, the United States Court of Appeals for the Fourth Circuit has instructed:

> With deadly force cases, special difficulties can arise during summary judgment. Often, the officer has killed the only other potential witness. Courts should be careful at summary judgment to avoid simply accepting an officer's self-serving statements and must consider all contradictory evidence. *See Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006); *see also Brown ex rel. Lawhorn v. Elliott*, 876 F.3d 637, 641 (4th Cir. 2017) (emphasizing "the importance of drawing inferences in favor of the nonmovant, even when . . . a court decides

> only the clearly-established prong" (quoting *Tolan v. Cotton*, 572 U.S. 650, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014))). Speculation alone cannot create a factual dispute. *Elliott* [*v. Leavitt*], 99 F.3d [640,] 644–45 [(4th Cir. 1996)] (requiring "specific, material factual contentions"). But in these cases, it would be easy to overvalue the narrative testimony of an officer and to undervalue potentially contradictory physical evidence. *See, e.g.*, *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("[T]he judge must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify."). So we should be cautious to avoid simply accepting officer testimony as true. *See Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999). But neither does caution lead us to be especially critical of officer testimony in these cases. We need only apply our normal summary-judgment rules, which ask whether reasonable juries might disagree over some material factual dispute. *See Harris* [*v. Pittman*], 927 F.3d [266,] 276 [(4th Cir. 2019)] (suggesting that exculpatory officer statements "do not justify a departure from the normal summary judgment standard"); *Plakas v. Drinski*, 19 F.3d 1143, 1147 (7th Cir. 1994).

*Stanton*, 25 F.4th at 234.

Although the specific facts of *Stanton* may not be precisely the same as the facts here, the premise in *Stanton* applies. Especially at the summary judgment stage, courts should be careful "to avoid simply accepting an officer's self-serving statements and must consider all contradictory evidence" when the only other potential witness is unavailable to testify. *Stanton*, 25 F.4th at 234. Contrary to Defendants' implication, this court is not suggesting that Defendants used deadly force to "eliminate Mr.

5

Ocran's ability to provide contrary testimony," and it is irrelevant that Defendant Officers had "no control whatsoever over who might have viewed the use of force." (ECF No. 56, at 6). The reality at this stage of the proceedings remains: Defendant Officers have testified as to their version of the events, but they have also "killed the only other potential witness." *Stanton*, 25 F.4th at 234.

Second, Defendants argue that the physical evidence in the case supports a finding of summary judgment in Defendant Officers' favor. (ECF No. 56, at 7). Specifically, Defendants point to the "crucial, undisputed fact" that a firearm "was retrieved from near Mr. Ocran's hands and head" after the shooting. (*Id.*). While this may be an undisputed fact, it does not resolve the disputed facts of whether Mr. Ocran pointed or fired a firearm at Defendant Officers. Even assuming that retrieving a firearm near Mr. Ocran's head and hands means Mr. Ocran must have been holding the firearm before he was shot, it does not necessarily follow that Mr. Ocran pointed or fired the firearm.

Moreover, Defendants argue:

> Mr. Ocran was wounded in a manner consistent with the Officers' testimony that as he fled, he turned to his right enough to raise the pistol, which he indisputably possessed, towards the officers. The entry wound to his right hip is sufficient to demonstrate that he was turned to the right when he was struck.

6

(ECF 56, at 12).  However, as the court previously discussed in its memorandum opinion:

> The Autopsy Report provides that Mr. Ocran suffered three gunshot wounds to the back, two gunshot wounds to the left arm, one through and through gunshot wound to the right thigh, and one through and through gunshot wound to the left thigh, all with a wound path of back to front, as well as one graze gunshot wound of the penis with an indeterminate wound path.

(ECF No. 54, at 30-31).  A reasonable jury can conclude that the wounds, especially the three wounds to Mr. Ocran's back,[2] support a finding that Defendant Officers shot at Mr. Ocran as he was fleeing, and not while posing an immediate threat to the Defendant Officers.  A genuine dispute of material fact remains; therefore, as set out in detail in the memorandum opinion (ECF No. 54) and on reconsideration, Defendants are not entitled to summary judgment on the remaining claims.

Additionally, Defendants re-argue that the first *Graham* factor, the severity of the crime at issue, weighs in Defendants' favor.  (ECF No. 56, 7-8).  As the court previously discussed, Mr. Ocran's crime of unlawful possession of a handgun was nonviolent.

---

[2] The autopsy report states that Mr. Ocran's wounds to his back were specifically to his "Upper Left Lateral Back," "Left Lateral Back," and to the "Lateral Right Hip/Lower Back."  (ECF No. 51-4, at 6).  Defendants argue that the term "lateral" means "from the side," so Mr. Ocran was shot from the side, and not from behind.  (ECF No. 56, at 4).  While "lateral" on its own means relating to the side, when paired with the word "back," it means the side of the back.

(ECF No. 54, at 25).  Police officers may, of course, stop and investigate a person whom they reasonably suspect is a felon in possession of a firearm.  *United States v. Gist-Davis*, 41 F.4th 259, 264 (4th Cir. 2022).  But concluding that the person is presently dangerous – justifying a frisk - requires more.  And justifying the use of deadly force requires significantly more.

In Defendants' reply to Plaintiff's opposition to Defendants' motion for reconsideration, Defendants rely on *Caraway v. City of Pineville*, 111 F.4th 369 (4th Cir. 2024), and *Rambert v. City of Greenville*, 107 F.4th 388 (4th Cir. 2024), two recent section 1983 excessive force cases where the Fourth Circuit found that defendant police officers were entitled to qualified immunity.  (ECF No. 58, at 1-6).  These cases are factually distinguishable from this case, and thus do not "demonstrate the Defendants' entitlement to qualified immunity here."  (ECF No. 58, at 1).  In *Caraway*, the Fourth Circuit affirmed the district court's summary judgment for the defendant police officers based on qualified immunity.  111 F.4th at 373-74.  In *Caraway*, four officers responded to a call about a pedestrian, Caraway, waving a gun.  In fact, Caraway was just holding a cellphone, but upon hearing the officers' commands to drop his gun, Caraway reached into his jacket to drop the gun he stored there.  *Id.* at 373.  In response, two of the officers fired at Caraway, injuring him. *Id.*

8

Although Caraway disputed whether he had pointed his gun intentionally at the officers, the Fourth Circuit found there was no genuine dispute of any material fact. *Id.* at 377, 381. Defendants point to this finding as support for summary judgment in Defendants' favor despite disputes whether Mr. Ocran pointed or shot his firearm at Defendant Officers. (ECF No. 58, at 3-4).

However, *Caraway* is distinguishable. First, and notably, in *Caraway*, Caraway survived and was able to testify to his account of the incident. 111 F.4th at 379. Obviously, Mr. Ocran is not available to testify, so this court must be "careful at summary judgment to avoid simply accepting an officer's self-serving statements and must consider all contradictory evidence." *Stanton*, 25 F.4th at 234. Additionally, while Caraway disputed whether he had pointed his gun at the officers intentionally, he did not dispute that he pulled his gun out of his jacket in front of the officers. *Caraway*, 111 F.4th at 379-380. Therefore, the Fourth Circuit agreed that there was not a dispute of material fact on this point, and affirmed summary judgment in favor of the officers based on qualified immunity. *Id.* at 381-85.

*Rambert* is similarly distinguishable. In *Rambert*, the district court denied summary judgment to the defendant police officer on qualified immunity grounds, finding that there was a genuine dispute of material fact regarding the reasonableness of the officer's conduct. 107 F.4th at 393. On appeal, the Fourth

9

Circuit reversed in part,[3] finding that the officer was entitled to qualified immunity. *Id.* at 407. In *Rambert*, a police officer responded to a breaking-and-entering call in the middle of the night. *Id.* at 394. As the officer was walking toward the house, he heard loud yelling, and the officer commanded the person to "get on the ground." *Id.* Instead, Rambert, the intruder, began running at the officer while continuing to yell. *Id.* The officer shot at Rambert, and Rambert fell to the ground. *Id.* At that point, the officer tripped and also fell. *Id.* Rambert rose up and "attempted to advance toward [the officer]," so the officer fired at Rambert again. *Id.* Rambert was unarmed, and he eventually died from his gunshot wounds. *Id.* at 394-95. The Fourth Circuit found that summary judgment was appropriate because the officer's behavior was reasonable under the circumstances, so the officer was entitled to qualified immunity. *Id.* at 400.

Defendants cite this case to argue that, here, summary judgment based on qualified immunity is also appropriate. (ECF No. 58, at 6). However, the undisputed facts in *Rambert* are distinguishable. First, in *Rambert*, the officer was responding to a breaking-and-entering call in middle of the night alone. 107 F.4th at 394. In this case, there were four officers following

---

[3] The Fourth Circuit declined to exercise jurisdiction over the plaintiff's state law claims and claims against the city, so the Fourth Circuit dismissed that portion of the appeal. 107 F.4th at 393.

Mr. Ocran.  (ECF No. 54, at 6).  Additionally, in *Rambert*, it was undisputed that Rambert ran toward the officer, while here, Mr. Ocran was trying to flee.  107 F.4th at 394.  Therefore, the recent Fourth Circuit cases do not show that Defendants are entitled to summary judgment.

For the foregoing reasons, Defendants' motion for reconsideration will be denied.  A separate order will follow.

                                                /s/
                                   DEBORAH K. CHASANOW
                                   United States District Judge